# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

BRUCE A. MABRY,

    *Defendant.*

Case No. 11-10102-01-EFM

## MEMORANDUM AND ORDER

Before the Court is Defendant Bruce A. Mabry's Motion to Suppress (Doc. 21). This Court held a hearing on September 1, 2011. For the following reasons, the Court denies Defendant's Motion to Suppress (Doc. 21).

### I. Factual Background

Bruce A. Mabry was released from prison on June 11, 2010 and placed on parole. Certain conditions were placed on Mabry for being on parole. The conditions included a prohibition of Mabry traveling outside of Kansas without the written permission of his parole officer; a prohibition of Mabry associating with persons actively engaged in illegal activity; a prohibition of Mabry possessing drugs or firearms; and a prohibition of Mabry violating state or federal law. Another condition allowed Mabry, his property, or his residence to be searched by parole officers or designated law enforcement officers.

On March 8, 2011, Mabry told his parole officer, Everett Garcia, that he wanted to move in with his girlfriend and advised him that his address had changed to 1301 N. Bitting in Wichita, Kansas. Mabry's parole officer added the name of Mabry's girlfriend, as well as the three children living in the household, to the change of address form. On that date, Mabry did not report to his parole officer that he had any contact with law enforcement or that any other violations of his parole had occurred.

On March 16, 2011, a fellow parole officer, Tony Marquez, learned that Mabry had been in a vehicle with another parolee, Cameron Newkirk, in Utah on February 28, 2011. Newkirk was arrested in Utah on that date because the vehicle contained 22 pounds of marijuana. Upon learning these facts, an arrest and detain warrant was issued for Mabry indicating that Mabry had violated his parole by traveling out of state.

Special Enforcement Officer (SEO) Warren Evans, along with two Wichita Police Department officers, Officers Tiede and Norton, served the warrant on Mabry at 1301 N. Bitting on March 17, 2011. The officers were aware that Mabry had been stopped with another parolee in Utah several weeks prior with a large amount of marijuana. SEO Evans and Officer Tiede went to the front door of the residence, while Officer Norton went to the back of the house. SEO Evans knocked on the door, and Averia Balderas, later identified as Mabry's girlfriend, answered the door. SEO Evans advised Balderas who he was and that he needed to speak to Mabry because he had an arrest warrant. Balderas did not want the officers to come into the house, and she attempted to close the door.

SEO Evans saw Mabry, whom he identified from a photo, come from the back area of the house, and SEO Evans and Officer Tiede entered the residence. SEO Evans placed Mabry under

arrest in the middle of the living room. SEO Evans testified that around the time he placed Mabry under arrest, he observed a tray underneath the coffee table in the living room that contained marijuana. SEO Evans sat Mabry down on the couch in the living room, and he asked Mabry's girlfriend, Balderas, to stay in the living room as well.

The officers cleared the residence with SEO Evans searching the bedroom nearest the living room, while Officer Tiede went to the basement attached to the adjacent kitchen. Upon entering the basement, she encountered an open area with a bed and box springs. To the left was a closet, and Officer Tiede was able to observed a firearm in the closet from where she was standing. Because Officer Tiede's radio did not transmit from the basement to upstairs, she brought the firearm upstairs with her and placed it on a table. By this time, Officer Norton had come from the back of the house and entered the residence through the front door.

On June 21, 2001, Mabry was indicted in the District of Kansas. On August 18, 2011, an eight count Superseding Indictment was returned charging Mabry with unlawful possession of firearms and ammunition, unlawful possession of marijuana, and unlawfully attempting to transport, or aid and abet, the transportation of marijuana. Mabry filed a Motion to Suppress.

## II. Analysis

"Parolees have a greatly diminished expectation of privacy, even in their homes, particularly when the parolee has been informed that he or she may be subject to property searches as a condition of release."[1] "In Kansas, the search of a parolee's person or property is reasonable if it is supported by reasonable suspicion that the parolee has violated a condition of release and if it is conducted by

---

[1] *State v. Haffner*, 42 Kan. App. 2d 205, 209, 209 P.3d 734, 738 (2009).

a (SEO) (Parole Special Enforcement Officer)."[2]  Furthermore, a protective sweep to ensure officer safety may take place incident to an arrest.[3]  "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."[4]  Officers within the home of an arrestee may be particularly vulnerable to a dangerous individual out of sight within the home.[5]

"Such a sweep is permitted if 'there [are] articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'"[6]  In addition, such a search is confined to a "cursory visual inspection of those places in which a person may be hiding."[7]  If police officers conducting a proper protective sweep of a residence come across evidence of criminal activity in plain view that a reasonable officer would conclude is incriminating, they may seize it.[8]

Here, the officers went to the address Mabry gave to his parole officer as his residence, 1301 N. Bitting, with an arrest warrant.  The officers knew that Mabry had violated his parole by being out of state.  They also knew that Mabry had been out of state with another parolee in a vehicle containing a considerable amount, 22 pounds, of marijuana and that drugs may be present in the

---

[2] *Id.* at 210, 209 P.3d at 738.

[3] *United States v. Walker*, 474 F.3d 1249, 1254 (10th Cir. 2007).

[4] *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

[5] *See Buie*, 494 U.S. at 333.

[6] *Walker*, 474 F.3d at 1254 (citing *Buie*, 494 U.S. at 334).

[7] *Buie*, 494 U.S. at 327.

[8] *United States v. Flores*, 149 F.3d 1272, 1278 (10th Cir. 1998).

home.[9]  When answering the door, Mabry's girlfriend appeared nervous and tried to shut the door to the residence when SEO Evans and Officer Tiede came to the front door.  Mabry came from the back kitchen area and was placed under arrest in the living room.  Mabry's girlfriend indicated that there were rooms in the basement which was attached to the kitchen.  Based on these circumstances, the Court concludes that the officers had a legitimate concern that another individual may be present in the house who could pose a threat to their safety.  In addition, the evidence shows that the sweep was quick as it was completed by the time Officer Norton, the officer who was stationed at the back door of the residence, had come around and entered the front door.

In performing the protective sweep, Officer Tiede went into the attached kitchen and to the basement.  In the open room in the basement, she observed a firearm in the closet.  Contemporaneous with the arrest, SEO Evans observed marijuana in plain view on the floor under the table.[10]

The facts presented, together with reasonable inferences that could be drawn from the facts, provide a justification for a protective sweep.  In addition, because the officers were in a lawful position, they could seize the evidence.  As such, Defendant's motion to suppress the evidence is denied.

---

[9] An officer's knowledge that a defendant may be involved in drug trafficking is sufficient to raise a reasonable suspicion that a suspect may be armed and dangerous because drug trafficking is often connected with violence. *See United States v. Hishaw*, 235 F.3d 565, 570 (10th Cir. 2000).

[10] "Under the plain view doctrine, police officers may properly seize evidence of a crime if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object." *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 21) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 9th day of September, 2011.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE